DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants Clear Channel Communications, Inc.; Clear Channel Broadcasting, Inc.; Denny Schaffer; Tricia Tischler; and Fred LeFebvre appeal the decision of the Lucas County Common Pleas Court ordering the disclosure of the salary and personal income information of Schaffer, Tischler and LeFebvre. Because we conclude that the trial court did not abuse its discretion, we affirm.
{¶ 2} This is an interlocutory appeal regarding the disclosure of salary and personal income information that appellants claim are trade secrets. Appellee Sandra Svoboda is a reporter for the Toledo Blade. Schaffer, Tischler and LeFebvre were employees of the WVKS (92.5 FM), a radio station owned and operated by Clear Channel Broadcasting, Inc. and its parent company, Clear Channel Communications, Inc. Svoboda alleges that in October 1999, Schaffer, Tischler and LeFebvre falsely reported on the air during the morning talk show known as the "Breakfast Club" that she was having a sexual/personal relationship with the publisher of The Blade and was negatively slanting her news stories regarding the University of Toledo in accordance with his views. The initial complaint filed January 20, 2000, set forth claims for slander, intentional infliction of emotional distress, and invasion of privacy against Clear Channel Communications and Schaffer. Along with this complaint, Svoboda served her first set of interrogatories and request for production of documents to both Clear Channel Communications and Schaffer. Included in these requests, Svoboda asked that Clear Channel Communications produce the personnel files of Schaffer and each and every employee of WVKS (92.5 FM) who participated in any way in the preparation and/or broadcast of the station's morning show in October 1999. Personnel file was defined to include in part "all documents concerning salary, compensation, benefits, bonuses, commission, payroll records, commission records, bonus records and W-2 forms for every year of employment." Schaffer was asked to produce "all federal, state and local income tax returns, personal property tax returns, estimated income tax returns, with all supporting schedules and documents, and preparer's worksheets and notes for the past 5 years" and financial statements, balance sheets, income statements, and net worth statements. Additional interrogatories and request for production of documents was served on Clear Channel Communications in September 2000, which sought copies of payroll checks and payroll stubs for Schaffer, Tischler, and LeFebvre.
{¶ 3} Svoboda amended her complaint to add Clear Channel Broadcasting, Tischler and LeFebvre as defendants in October 2000. Interrogatories and requests for production of documents were served on these defendants in March 2001. The discovery requests were almost identical to the first set of interrogatories and request for production of documents served on Clear Channel Communications and Schaffer with the exception that Clear Channel Broadcasting was not asked to produce the personnel files of all the employees who worked on the morning show, just Schaffer's.
{¶ 4} Svoboda filed a motion to compel on April 27, 2001. Among the items that she sought to compel were Tischler's responses to the first set of discovery requests and Clear Channel Communications' responses to the additional discovery requests propounded in September 2000. Another motion to compel was filed on June 20, 2001. In this motion, Svoboda argued that Schaffer, Tischler, and LeFebvre's objection to producing documents regarding their financial condition was improper and asked the trial court to compel their responses. Appellants responded to the motion and requested a protective order as to their private, personal financial information. In its judgment entry filed August 22, 2001, the trial court ordered that appellants fully respond to the requested financial data on Schaffer, Tischler and LeFebvre by September 28, 2001. The trial court reserved ruling on the April 27, 2001 motion to compel, pending a determination as to whether appellants had sufficiently responded.
{¶ 5} On September 28, 2001, appellants provided the trial court with the financial documents of Schaffer, Tischler and LeFebvre under seal, but filed a motion to stay production of that documentation to Svoboda. Appellants then filed a renewed motion for protective order on April 26, 2002, arguing that the personal income of Schaffer, Tischler and LeFebvre was a trade secret and attaching the affidavit of Andrew Stuart, the vice president and regional manager of Clear Channel Radio, Toledo, in support of their trade secret argument. In its journal entry from the hearing held on May 3, 2002, the trial court denied appellants' motions and ordered appellants to "produce unredacted (except for social security numbers and spousal information) copies of income, salary and employment contract documents contained in the personnel file of defendants Schaffer, Tischler, and LeFebvre, unredacted (except for social security numbers and spousal information) bank statements, W-2s and tax returns for the years 1998 to the present." Also pursuant to its earlier order granting Svoboda's motion to compel the income information of Schaffer, Tischler and LeFebvre, the trial court issued a protective order on May 8, 2002, which provided that the income information would be treated as confidential and limited its disclosure. The protective order expires at the time of trial with the proffer of any of the documents or information unless otherwise ordered by the trial court. Appellants now appeal from these orders.
{¶ 6} Appellants raise the following three assignments of error on appeal:
{¶ 7} "I. Issuance of an overly broad discovery order compelling disclosure of the corporate appellants' indisputable, confidential, proprietary, and trade secret information concerning the individual appellants' personal income and compensation to appellee was an abuse of the trial court's discretion.
{¶ 8} "II. The trial court abused its discretion by issuing an overly broad order compelling disclosure of privileged information, in the absence of a proper motion to compel directed to the corporate appellants, and without any Rule 34 request to the individual appellants for the documents.
{¶ 9} "III. The trial court abused its discretion in failing to fashion an appropriate protective order that continuously protects and preserves appellants' confidential, proprietary, and trade secret information."
{¶ 10} As an initial matter, we note that appellants, in their assignments of error, assume that the personal income and salary information of Schaffer, Tischler and LeFebvre are trade secrets. Svoboda opposed appellants' claim of trade secret, and the trial court never found specifically that this information was such.[1] Rather, the trial court denied the motion for renewed protective order in which appellants asserted their trade secret claim, thus implicitly denying the information trade secret status. The trial court, however, did state in its protective order that the income information of Schaffer, Tischler and LeFebvre would be treated as confidential. We, therefore, will initially examine whether the trial court erred in failing to grant trade secret status to the personal income and salary information at issue.
{¶ 11} "Trade secret" is defined in R.C. 1333.61(D) as follows:
{¶ 12} "(D) `Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
{¶ 13} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
{¶ 14} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
{¶ 15} In addition to the above definition, there are six factors to be considered in determining whether information constitutes a trade secret: (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, i.e., by employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the hold in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information. State ex rel. Besser v. Ohio State Univ. (2000), 89 Ohio St.3d 396, 399-400; Pyromatics, Inc. v. Petruziello (1983), 7 Ohio App.3d 131, 134-135.
{¶ 16} In this case, appellants rely on the affidavit of Andrew Stuart, the vice president and regional manager for Clear Channel Radio, Toledo, to establish trade secret status.[2]
{¶ 17} Stuart's affidavit contains a number of conclusory statements, which measured against R.C. 1333.61(D) are insufficient in themselves to satisfy appellants' burden. For instance, in the affidavit, Stuart states that he was the only person who participated in the negotiation of the compensation packages for Schaffer, Tischler, and LeFebvre, but does not state how many employees have access to this information. He also avers that reasonable, affirmative steps are taken to maintain the secret and confidential nature of this information by citing clauses in their individual contracts and the employee handbook which prohibit the disclosure of trade secrets. A review of Schaffer's employment contract, however, reveals otherwise.[3] While there is a confidentiality clause in the contract, the specified definition of trade secrets does not include an employee's compensation. An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy. Besser, supra. at 400. Stuart's affidavit states the six factors but fails to factually demonstrate them as Besser requires. Appellants, therefore, have not met their burden and demonstrated that the salary and income information is a trade secret. As a result, we conclude that the trial court did not abuse its discretion in failing to classify the salary and income information of Schaffer, Tischler and LeFebvre as a trade secret.
 I
{¶ 18} In the first assignment of error, appellants argue that the trial court erred by compelling the disclosure of the salary and personal income of Schaffer, Tischler, and LeFebvre. It is well established that a trial court enjoys considerable discretion in the regulation of discovery proceedings. Manofsky v. Goodyear Tire Rubber Co. (1990),69 Ohio App.3d 663, 668. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude, in reaching its decision, was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Although a trial court has broad discretion in regulating discovery, it is not unlimited, as the trial court must consider both the interests of the parties seeking discovery and the interests of the parties resisting discovery. Gibson-Myers Associates, Inc. v. Pearce (Oct. 27, 1999), 9th Dist. No. 19358.
{¶ 19} Appellants argue that this information should not be disclosed for four reasons (1) it is a trade secret and therefore privileged; (2) it is not relevant to Svoboda's claims; (3) Svoboda has failed to establish a prima facie case for punitive damages; (4) it will have a chilling effect on the First Amendment. As to the first argument, we have already determined that the salary and income information is not a trade secret. Even if the information were a trade secret, it is not absolutely privileged. Civ.R. 26(C) clearly contemplates the discoverability of trade secrets and expressly provides that trade secrets may be disclosed with an appropriate protective order.
{¶ 20} Second, appellants' relevancy argument also fails. They contend that Svoboda would not be harmed by the court's denial of the personal income information of Schaffer, Tischler, and LeFebvre because it is not essential to her claim for punitive damages, citing Wagner v. McDaniels (1984), 9 Ohio St.3d 184 (evidence of net worth not required for a claim for punitive damages). Appellants then argue, since evidence of net worth is not indispensable, evidence of personal income is not indispensable, but actually irrelevant. In Wagner, the appellate court had overturned an award of punitive damages because the trial record was inadequate concerning the relationship between the defendant's economic status and the punitive damages awarded. In reversing, the Supreme Court of Ohio stated "Evidence of a defendant's net worth may be considered by the fact-finder in determining appropriate punitive damages, but this evidence is not required before otherwise proper punitive damages may be awarded to a prevailing party." Id. at paragraph two of the syllabus. So while a claim of punitive damages may be sustained without evidence of a defendant's net worth, because a plaintiff may in fact submit such evidence for the jury's consideration, it may be discoverable. Although appellants try to distinguish personal income from net worth, personal income is an asset taken into consideration when determining a person's net worth and ability to pay a punitive damages award and therefore may be discoverable.
{¶ 21} Third, in arguing that Svoboda has not established a prima facie case for punitive damages and therefore is not entitled to discovery of the personal salary and income information, appellants cite Tschantz v. Ferguson (1994), 97 Ohio App.3d 693. In Tschantz, the plaintiff sought the income tax returns of her former boss against whom she had made claims of intentional and negligent emotional distress and punitive damages. The defendant had argued that Tschantz had failed to demonstrate a prima facie case for punitive damages; however, the Eighth Appellate District simply held that the trial court did not abuse its discretion in granting a protective order because the requested evidence was not necessary to establish a claim for punitive damages. Even though another judge may have ruled differently by granting the protective order requested by appellants, we cannot say that the trial court abused its discretion given the record in this case and the potential admissibility of such information.
{¶ 22} Finally, appellants contend that disclosing the requested salary and personal income information will have a chilling effect on the First Amendment right to free speech. The salary and income information is not a trade secret, and appellants' argument is largely speculative. See In re: August 28, 2002 Grand Jury Subpoena, 151 Ohio App.3d 825,2003-Ohio-1184 at ¶ 11; Branzburg v. Hayes (1972), 408 U.S. 665,22 L.Ed.2d 626, 92 S.Ct. 2646. Their speech is not being restrained, and there is no evidence that any potential harm is so great that it would affect appellants' First Amendment rights.
{¶ 23} Because net worth is relevant evidence in assessing a claim for punitive damages, we find that the trial court did not abuse its discretion in ordering the discovery of the salary and income information of Schaffer, Tischler, and LeFebvre. In allowing the discovery of this information, we make no comment as to whether it will ultimately be admissible at trial. Appellants' first assignment of error is not well taken.
 II
{¶ 24} In their second assignment of error, appellants challenge the breadth of the trial court's order of discovery.
{¶ 25} The trial court held a hearing on May 3, 2002, on a number of motions, including appellants' motion to stay and renewed motion for protective order. As a result of that hearing, the trial court ordered appellants to produce unredacted copies of income, salary and employment contract documents contained in the personnel file of Schaffer, Tischler, and LeFebvre, unredacted bank statements, W-2s and tax returns for the years 1998 to the present. Appellants maintain that the trial court's judgment entry and order was overly broad because (1) neither Clear Channel Communications nor Clear Channel Broadcasting was the focus of Svoboda's motion to compel and (2) Svoboda did not propound any formal Civ.R. 34 discovery upon Schaffer, Tischler, or LeFebvre requesting personal income or compensation information.
{¶ 26} A review of the record shows that appellants' position that Svoboda never sought to compel the income and compensation information from Clear Channel Communications and Clear Channel Broadcasting is not entirely accurate. Appellants focus their arguments around the June 20, 2001 motion to compel. However, there was an earlier motion to compel filed April 27, 2001, in which Svoboda asked both that Clear Channel Communications respond to the outstanding discovery requests from September 2000, and that Clear Channel Broadcasting answer pending March 2001 discovery requests. The information sought included the payroll checks and payroll stubs of Schaffer, Tischler and LeFebvre and the personnel file of Schaffer.
{¶ 27} Appellants' contention that Svoboda limited her motion to compel to the "financial condition" of Schaffer, Tischler, and LeFebvre, but never expressly sought compensation and benefits information from them is also disingenuous. Svoboda asked for income tax returns, supporting tax documents and income statements, all of which would contain their salary and compensation information.
{¶ 28} Appellants also contend that Svoboda never sought to compel employment contracts. These documents, however, had apparently been provided in discovery with the salary and compensation information redacted. Because we find the trial court was within its discretion to order the disclosure of the salary and income information, it was also within the discretion of the trial court to order the disclosure of the employment contracts in unredacted form.
{¶ 29} Svoboda did not need to file a separate motion to compel concerning the income and compensation information. Civ.R. 26(C) provides in part that "[i]f the motion for a protective order is denied in whole or in part, the court, on terms and conditions as are just, may order that any party or person provide or permit discovery." Appellants twice sought to protect the salary and compensation information of Schaffer, Tischler, and LeFebvre in a motion for protective order. The trial court denied these motions and pursuant to Civ.R. 26(C) had the authority to order appellants to produce the documents containing this information.
{¶ 30} Furthermore, the trial court's discovery order arose from a hearing on various motions. There is no transcript of this hearing.[4]
While a stipulated statement of evidence and proceedings under App.R. 9(C) was filed, it provides little assistance. It states in part:
{¶ 31} "Each party expressly relied upon and discussed the arguments presented in their filed memoranda. However, the parties do not agree what specific arguments were made orally during the telephone hearing. * * *
{¶ 32} "The Court, without making any particular or specific findings with regard to the foregoing, denied Defendants' September 28, 2001 Motion for a Protective Order Staying the Production of the Individual Defendants' Documentation of Personal Income and Defendants' April 26, 2002 Renewed Motion for Protective Order Denying the Production of the Individual Defendants' Documentation of Personal Income and ordered that the individual Defendants disclose the requested financial data, including their personal salary and compensation. * * *"
{¶ 33} Because the stipulated statement is vague and there is no actual transcript, we must presume the regularity of the trial court's order. Appellants' second assignment of error is not well taken.
 III
{¶ 34} In the third assignment of error, appellants argue that the trial court erred in failing to construct an appropriate protective order. In essence, appellants argue that the trial court should have fashioned a protective order that continuously preserved the salary and personal income information of Schaffer, Tischler, and LeFebvre.
{¶ 35} The decision to grant a motion for a protective order is left to the discretion of the trial court. Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. State ex rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467, 469. In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result. Arnold v. Am. Natl. Red Cross (1994), 93 Ohio App.3d 564, 576; Doe v. Univ. of Cincinnati (1988), 42 Ohio App.3d 227, 231.
{¶ 36} The trial court issued the following protective order with regard to salary and income information of Schaffer, Tischler, and LeFebvre:
{¶ 37} "A. The income information cannot be used for any purpose except preparation for and presentation at trial. All parties to these proceedings and their agents and employees are bound by this Order;
{¶ 38} "B. Disclosure of the income information shall be limited to the plaintiff, plaintiff's counsel and plaintiff's counsel's employees and agents;
{¶ 39} "C. At the conclusion of the trial of this matter (and any related appeals), the plaintiff's counsel shall return to defendants' counsel all copies of the income information in the possession of plaintiff, plaintiff's counsel and/or any agent and/or employee of plaintiff's counsel;
{¶ 40} "D. No disclosure of the list or its contents may be made to any agent or employee of plaintiff or her counsel until such agent or employee has signed an agreement to be bound by this order.
{¶ 41} "E. Any violation of this order may be treated by the Court as a contempt of Court subject to sanctions to be determined by the Court.
{¶ 42} "F. This [sic] provisions of this order shall expire at the time of trial in connection with the proffering of any of the documents or information covered by this order unless the Court orders otherwise."
{¶ 43} Appellants essentially complain that the protective order provides only temporary protection. While it is true that the protective order expires upon proffer of the salary and income information at trial, the possibility of a continuing protective order was not foreclosed by the trial court because it specifically reserved the right to amend the protective order. Furthermore, if this case does not actually go to trial, the protective order remains in effect. Therefore, we cannot say that the trial court abused its discretion in the way it fashioned the protective order. Appellants' third assignment of error is not well taken.
{¶ 44} Upon consideration, we find that substantial justice was done the parties complaining. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal.
 JUDGMENT AFFIRMED.
[1] In some instances, a case has been remanded to the trial court for an in camera inspection of the documents to determine whether the requested discovery was a trade secret or protected by attorney-client privilege. See Gibson-Myers Associates, Inc. v. Pearce (Oct. 27, 1999), 9th Dist. No. 19358; Schottenstein, Zox Dunn v. McKibben, 10th Dist. No. 01AP-1384, 2002-Ohio-5075. In those cases, however, the appellate court found that there was a lack of any evidence on the record or transcript. In this case, there is some evidence in the form of an affidavit, and a hearing had been conducted. Therefore, we will proceed with this appeal, rather than unnecessarily delay the matter for a specific determination by the trial court as to whether the salary and personal income information is a trade secret.
[2] At the appellate oral argument, appellants argued that they were not given the opportunity to present additional evidence because of the nature of the hearing conducted on May 3, 2002 on the motion for stay and renewed motion for protective order. Appellants, however, did not raise this issue as an assignment of error. An issue raised for the first time in oral argument and not assigned as error in the appellate brief is generally untimely. State v. Hamilton, 11th Dist. No. 2001-A-0038, 2002-Ohio-6915 at ¶ 17; State v. Chambers (July 13, 2000), 10th Dist. No. 99AP-1308. App.R. 12(A)(2) also provides that an appellate court may disregard assignments of error not separately argued in the briefs. We, therefore, will not address the procedural form of the hearing.
[3] Only a redacted copy of Schaffer's employment contract, which was attached to Svoboda's memorandum contra defendants' renewed motion for protective order, was available for review. Defendants stated that they provided unredacted income information to the trial court under seal. These documents, though, were not filed with the clerk and therefore are not part of the record.
[4] As we have already noted, appellants did not appeal the form of the hearing.